**COASTAL CONDUIT & DITCHING, INC., Appellant,**

v.

**NORAM ENERGY CORP., d/b/a Entex, Appellee.**

**No. 14–99–00273–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 14, 2000.

---

Robert B. Dubose, Robert M. Roach, Jr., Houston, for appellants.

Robert D. Brown, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Coastal Conduit & Ditching, Inc. ("Coastal Conduit") appeals the summary judgment granted in favor of Noram Energy Corp. d/b/a Entex ("Entex") on Coastal Conduit's claims for negligence, negligence per se, and gross negligence, and its suit for declaratory judgment. In this case, we consider whether Texas law prohibits the recovery of purely economic damages in negligence in the absence of a claim for

personal injury or property damage when the parties are contractual strangers. We affirm.

## I. Background

Coastal Conduit provides services for the trenching and cutting of ditches to houses for the purpose of installing electrical connections. This activity involves Coastal Conduit's having to excavate in the vicinity of gas lines operated by Entex. At least 48 hours prior to excavating in an area, Coastal Conduit notifies the One Call Service Center ("One Call") of the area in which it is going to be excavating. One Call is responsible for notifying Entex that excavation activity will take place in the vicinity of Entex's gas lines. Upon receiving notification, Entex is responsible for marking the location of its underground gas lines to prevent contact with the lines.

Coastal Conduit claims that approximately 25% of the time that it has notified Entex via One Call that it is going to be excavating near Entex's gas lines, Entex either fails to mark or mismarks the location of its lines. Coastal Conduit further claims Entex's gas lines are also not buried at the proper depth. Coastal Conduit asserts that, as a result of these problems, it takes an additional twenty to thirty minutes to complete each job because its crew must use small hand tools to locate Entex's gas lines, thereby incurring additional overhead and expenses and putting its employees and the public at risk of injury.

Seeking to recover its increased expenses, Coastal Conduit brought claims against Entex for negligence, negligence per se, and gross negligence. Coastal Conduit also sought a declaratory judgment that Entex violated applicable federal regulations by failing to properly mark its lines and by failing to bury its lines at the proper depth. Entex moved for no evidence summary judgment on Coastal Conduit's negligence, negligence per se, and gross negligence claims on the ground Coastal Conduit's claims for economic losses resulting from Entex's alleged negligence are precluded in the absence of any accompanying claim for personal injury or property damage. Entex also moved for no evidence summary judgment on Coastal Conduit's declaratory judgment action on the ground that, because Coastal Conduit cannot maintain any cause of action against it, no justiciable controversy exists. The trial court granted Entex's no evidence motion for summary judgment. Coastal Conduit appeals the granting of summary judgment on its negligence, negligence per se, and gross negligence claims and its declaratory judgment action.[1]

## II. Standard of Review

Rule 166a(i) provides that "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). On review of a "no evidence" summary judgment, the appellate court reviews the evidence in the light most favorable to the nonmovant and disregards all evidence and inferences to the contrary. See Blan v. Ali, 7 S.W.3d 741, 747 (Tex.App.-Houston [14th Dist.] 1999, no pet.). We sustain a no evidence summary judgment if: (1) there is a complete absence of proof of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. See id. Less than a scintilla of evidence exists when the evidence offered

---

1. Coastal Conduit also brought claims for negligent misrepresentation, nuisance, conspiracy, promissory estoppel, fraud, breach of contract as a third party beneficiary, tortious interference, and trade disparagement. Coastal Conduit does not appeal the trial court's granting of summary judgment on those claims.

to prove a vital fact is so weak so as to do no more than create a mere surmise or suspicion of its existence, and in legal effect is no evidence. *See Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *See id.*

■ Coastal Conduit contends that because the only ground upon which Entex based its motion for summary judgment on the negligence, negligence per se, and gross negligence claims is the economic loss rule, Entex's summary judgment may only be affirmed on that ground. We agree.

■ A summary judgment cannot be affirmed on grounds not expressly set forth in the motion or response. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993); *Powers v. Adams,* 2 S.W.3d 496, 497 (Tex.App.-Houston [14th Dist.] 1999, no pet.). No caselaw addresses this particular contention with regard to no evidence motions for summary judgment. However, the commentary to Rule 166a(i) provides that "[t]he existing rules continue to govern the general requirements of summary judgment practice." *See* Tex. R. Civ. P. 166a(i) cmt. Therefore, Entex's summary judgment may only be affirmed on the ground that Coastal Conduit's claims are barred by the economic loss rule.

### III. Elements of Negligence, Negligence Per Se, and Gross Negligence

Entex moved for summary judgment on Coastal Conduit's negligence, negligence per se, and gross negligence claims on the ground that those claims are barred by the economic loss rule in the absence of contractual privity and any accompanying claim for personal injury or property damage. Specifically, Entex argues that under the economic loss rule, it does not owe a duty to an excavator such as Coastal Conduit not to make the performance of its contracts more expensive or burdensome. Duty is an element of each of Coastal Conduit's claims. *See Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999) (stating that without duty there is no liability in negligence); *Perry v. S.N.,* 973 S.W.2d 301, 304 (Tex.1998) (observing that the existence of a legally cognizable duty is a prerequisite to a finding of negligence per se); *Shell Oil Co. v. Humphrey,* 880 S.W.2d 170, 174 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (stating that because a finding of ordinary negligence is a prerequisite to a finding of gross negligence, it must be found that the defendant owed a duty of care to the plaintiff). Therefore, Coastal Conduit must establish that Entex owed it a duty not to mismark the location of its gas lines or to bury its lines at improper depths in the absence of either a contractual relationship or a claim for personal injury or property damage.

### IV. Economic Loss Rule

In its first issue, Coastal Conduit argues that the economic loss rule does not bar recovery on its negligence claims because Texas law expressly recognizes the preclusion of economic losses in negligence in only two instances, which are not present in this case. First, the economic loss rule precludes recovery of economic losses in negligence when the loss is the subject matter of a contract between the parties. *See Southwestern Bell Tele. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986); *see also Essex Ins. Co. v. Blount, Inc.,* 72 F.Supp.2d 722, 724 (E.D.Tex.1999); *Coffey v. Fort Wayne Pools, Inc.,* 24 F.Supp.2d 671, 687 (N.D.Tex.1998). Second, the economic loss rule bars recovery of economic losses in a negligence claim brought against the manufacturer or seller of a defective product where the defect results in damage only to the product and not to a person or to other property. *See American Eagle Ins. Co. v. United Techs. Corp.,* 48 F.3d 142, 144 (5th

Cir.1995); *Hininger v. Case Corp.*, 23 F.3d 124, 126–27 (5 th Cir.1994); *Indelco, Inc. v. Hanson Indus. N. Am.-Grove Worldwide*, 967 S.W.2d 931, 932–33 (Tex.App.-Houston [14 th Dist.] 1998, pet. denied); *Brewer v. General Motors Corp.*, 926 S.W.2d 774, 780 (Tex.App.-Texarkana 1996), *aff'd as modified*, 966 S.W.2d 56 (Tex.1998). Therefore, we must determine whether Texas law precludes the recovery of economic damages in a negligence case such as this, where the parties are contractual strangers and there is no accompanying claim for damages to a person or property.

Coastal Conduit asserts that the general rule in Texas is that economic losses are recoverable in negligence. *See Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 940 n. 12 (Tex.App.-Texarkana 1997, writ denied) (citing *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 78, 80 (Tex.1977)). Coastal Conduit's reliance on *Purina Mills. Inc.*, however, is misplaced. *Purina Mills, Inc.* is a products liability case, which involved a claim for economic loss for lost milk production after the ingestation of contaminated feed by the plaintiff's cattle. *See id.* at 930. The court stated that such economic losses are not recoverable under strict liability, but, instead, are recoverable under negligence and the Uniform Commercial Code's ("UCC") implied warranties. *See id.* at 940 n. 12 (citing *Nobility Homes*, 557 S.W.2d at 78, 80). Because *Purina Mills, Inc.* is a products liability case, it is inapplicable to the facts in this case.

Moreover, in support of its holding, the *Purina Mills, Inc.* court cited to the Texas Supreme Court case of *Nobility Homes*. This court, however, has previously determined that the statement in *Nobility Homes* allowing for economic loss in negligence in a products liability case when there is no claim for personal injury or damage to other property is *obiter dictum*. *See Indelco, Inc.*, 967 S.W.2d at 932–33. *Nobility Homes* involved a claim for economic losses resulting from defects in a mobile home. *See Nobility Homes*, 557 S.W.2d at 78. The *Nobility Homes* court considered whether a plaintiff can bring a cause of action under strict liability or the implied warranties of the UCC when the plaintiff, who is not in privity with the manufacturer, suffers only economic damages due to the loss of the defective product. *See id.* The court stated that economic losses may not be recovered under strict liability when those are the only damages, but that such damages could be recovered under the implied warranties provisions of the UCC and in negligence. *See id.* Commentators have explained the effect of this statement:

> Texas lawyers sometimes state that *Nobility Homes* stands for the proposition that a consumer can recover for economic losses in negligence. Notwithstanding the headnote, the court never held that a plaintiff can recover economic loss in negligence. The court did state that, "consumers have other remedies for economic loss against persons with whom they are not in privity. One of these remedies is a cause of negligence." The court, however, did not offer any authority for this proposition, and, more importantly, it is dicta. The plaintiff alleged negligence, and the trial judge found that the defendant's negligence was a proximate cause of the plaintiff's injuries. The defendant attacked these findings in the court of appeals on the ground that there was either no evidence or insufficient evidence to support them. The defendant did not attack these findings on the ground that, as a categorical matter, economic damages are not recoverable in negligence. The supreme court affirmed the negligence judgment solely on the ground that the defendant had not challenged these findings of the courts [sic] of appeal in the supreme court. Any confusion about the meaning of *Nobility Homes* has been laid to rest by *Jim Walter Homes*.

William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 TEX. TECH.

L.Rev. 477, 486–87 (1992). Accordingly, we do not find *Purina Mills, Inc.* to be authority under Texas law for allowing recovery of economic damages in negligence in a non-products liability case when there is no claim for personal injury or property damage.

Entex, on the other hand, relies on *American Eagle Ins. Co.*, a products liability case in which the only damages were to the product, for the general proposition that Texas law does not recognize a cause of action for negligence when the only loss is economic. *See American Eagle Ins. Co.*, 48 F.3d at 144. Entex cites to the following statement by the *American Eagle Ins. Co.* court: "The first question is whether Texas recognizes a cause of action for negligence when the only loss is economic. This Circuit has already found that Texas does not recognize such a cause of action." *Id.* Entex, however, has taken this statement out of context. The court, in the next sentence, states "Texas [law] does not permit recovery under a negligence theory for economic loss resulting from damage to a defective product." *Id.* Similarly, we do not find that *American Eagle Ins. Co.* supports the general proposition that economic damages may be recovered under a negligence theory in a case which does not involve a claim based on a defective product and which does not also assert personal injury or property damages.

■ Neither Coastal Conduit nor Entex has cited any Texas authority regarding whether economic losses are recoverable in a negligence action when the parties are contractual strangers and when there is no claim for an accompanying injury to property or person. However, our research has revealed a case from the Amarillo Court of Appeals addressing this issue. *See Rodriquez v. Carson,* 519 S.W.2d 214 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.). In *Rodriquez,* a truck driver, who received no personal injuries, sued for lost wages and commissions after the truck owned by his employer was damaged in a collision caused by the defendant's negligence. *See id.* at 215. The court found that there was

> no breach of a duty owed to appellant by appellee with respect to the injury, i.e., the absence of a truck for appellant to drive. If there were any obligation in this respect, it would arise by reason of some relationship or agreement between appellant and his employer. The appellant did not suffer any bodily injuries, and in the absence of any showing that he had any vested interest in the truck he did not suffer any injury to personal property.

*Id.* at 216.

The United States Supreme Court has recognized in admiralty that absent privity of contract between the parties and injury to a person or property, a plaintiff may not recover in negligence for economic loss. *See Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). In *Robins Dry Dock & Repair Co.,* the plaintiffs sought economic damages from the dry dock for the loss of the use of a ship after the dry dock negligently damaged the ship's propeller. *See id.* at 307, 48 S.Ct. 134. The plaintiffs were not the owners of the ship, but, instead, were the time charterers. *See id.* Rejecting the plaintiffs' claim for economic damages, the Supreme Court stated that "as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown . . . The law does not spread its protection so far." *Id.* at 309, 48 S.Ct. 134. Courts have continued to apply the rule announced in *Robins Dry Dock & Repair Co.* to maritime cases. *See, e.g., Channel Star Excursions, Inc. v. Southern Pac. Transp. Co.,* 77 F.3d 1135 (9th Cir.1996); *Louisiana ex. rel. Guste v. M/V Testbank,* 752 F.2d 1019 (5th Cir. 1985).

This issue has been addressed in non-admiralty contexts by other jurisdictions, a majority of which hold that, in the absence

of privity of contract and accompanying personal injury or property damage, a plaintiff cannot recover for purely economic losses resulting from another's negligence. *See, e.g., Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988 (1st Cir. 1992); *Leadfree Enters., Inc. v. United States Steel Corp.*, 711 F.2d 805 (7th Cir. 1983); *Willis v. Georgia N. Ry. Co.*, 169 Ga.App. 743, 314 S.E.2d 919 (1984); *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978); *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124 (Iowa 1984); *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 613 N.E.2d 902 (1993); *D & A Dev. Co. v. Butler*, 357 N.W.2d 156 (Minn.Ct.App. 1984); *Local Joint Executive Bd. v. Stern*, 98 Nev. 409, 651 P.2d 637 (1982); *Stevenson v. East Ohio Gas Co.*, 73 N.E.2d 200 (Ohio App.1946); *Mandal v. Hoffman Constr. Co.*, 270 Or. 248, 527 P.2d 387 (1974); *Aikens v. Baltimore & Ohio R.R. Co.*, 348 Pa.Super. 17, 501 A.2d 277 (1985); *United Textile Workers of Am. v. Lear Siegler Seating Corp.*, 825 S.W.2d 83 (Tenn.App.1990); *see also* RESTATEMENT (SECOND) OF TORTS § 766C (1977) (stating that there is no liability for economic losses that do not derive from physical harm for negligently making the performance of another's contract more expensive or burdensome); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 657 (5th Ed.1984) (stating that "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things").

A minority of jurisdictions have allowed recovery of purely economic damages on a finding that there was a foreseeable risk of harm or a foreseeable plaintiff. In *J'Aire Corp. v. Gregory*, a case involving a lessee seeking to recover lost profits from a contractor for delay in completing the renovation of leased premises, the California Supreme Court found that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity." *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 410, 598 P.2d 60, 63 (1979). The court explained that where the risk of harm is foreseeable, the plaintiff's economic interests should not remain uncompensated simply because there is no accompanying injury to a person or property. *See id.* at 805, 157 Cal.Rptr. at 411, 598 P.2d at 64.

In *People Express Airlines v. Consolidated Rail Corp.*, a commercial airline was forced to evacuate its premises at the Newark International Airport because of a gas leak from a railway tank car, thereby interrupting its business operations and resulting in economic losses from cancelled flights and lost reservations. *See People Express Airlines v. Consolidated Rail Corp.*, 100 N.J. 246, 248–49, 495 A.2d 107, 108 (1985). The New Jersey Supreme Court held that a defendant who has breached its duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty. *See id.* at 267, 495 A.2d at 118.

We decline to follow *J'Aire Corp.* and *People Express Airlines*. Instead, we will follow the Amarillo Court of Appeals in *Rodriquez* and the majority of other jurisdictions which have considered this issue. "The foreseeability of economic loss, even when modified by other factors, is a standard that sweeps too broadly in a professional or commercial context, portending liability that is socially harmful in its potential scope and uncertainty." *Local Joint Executive Bd.*, 98 Nev. at 411, 651 P.2d at 638.

Coastal Conduit argues that to preclude its recovery of economic losses would be contrary to precedent in Texas permitting the recovery of economic losses in negligence cases. *See, e.g., Holland v. Hayden*, 901 S.W.2d 763 (Tex.App.-Houston [14th

Dist.] 1995, writ denied) (legal malpractice claim brought by former client against attorney); *City of Tyler v. Fowler Furniture Co.*, 831 S.W.2d 399 (Tex.App.-Tyler 1992, writ denied) (claim for lost profits recovered for damage caused to property by negligence); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170 (Tex.App.-Waco 1987, writ denied) (accounting malpractice claim brought by client against accountant); *Allied Bank West Loop, N.A. v. C.B.D. & Assocs., Inc.*, 728 S.W.2d 49 (Tex.App.-Houston [1 st Dist.] 1987, writ ref'd n.r.e.) (claim brought by customer against bank for mishandling account); *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex.1987) (claim brought by an insured against his insurer for failing to settle a claim within an insurance policy's limits). We disagree. Each of the above cited cases relied upon by Coastal Conduit involves either a contractual relationship between the parties or a claim for property damages, both situations imposing a duty on the defendants in those cases. Here, there is neither a contractual relationship between Coastal Conduit and Entex nor a claim for personal injury or property damage.[2]

Coastal Conduit further argues that Texas common law imposes a duty on Entex to mark properly or to bury at a proper depth its gas lines when it receives notification that excavation activities are to take place near its gas lines. *See, e.g., Phillips Pipe Line Co. v. Razo*, 420 S.W.2d 691, 695 (Tex.1967) (finding that the pipeline operator's duty to prevent contact between its pipeline and heavy construction equipment by marking, or giving warning of, the pipeline arises when it is notified

that an extraordinary or damaging use will be made of the surface near its pipeline); *Pioneer Natural Gas Co. v. K & M Paving Co.*, 374 S.W.2d 214, 218–19 (Tex.1963) (finding that a pipeline operator has the duty to install properly, and to disclose the location of, its pipeline to prevent contact with the pipeline when it is put on notice that extraordinary use of the surface is to take place); *Young v. Herrington*, 312 S.W.2d 685, 687 (Tex.Civ.App.-Austin 1958, no writ) (finding that the owner of a gas pipeline has a duty to prevent contact with the pipeline by burying, or marking the location of, the pipeline upon notification that the land upon which the pipeline is located is to be cleared); *Morgan v. Empire S. Gas Co.*, 236 S.W.2d 198, 200 (Tex. Civ.App.-Eastland 1950, no writ) (finding that without knowledge that spreader dams were to be constructed on the property where a gas line was located, the owner of the gas line had no duty to mark the location of the gas line). Each of these cases, however, involved a claim for personal injuries or property damage sustained as a result of a pipeline being struck and, therefore, are inapplicable here in the absence of any claim for personal injury or property damage.

Coastal Conduit also asserts that federal regulations further impose a duty on Entex to bury its lines at a proper depth and to mark the location of its lines upon notification that excavation activities are going to take place in the vicinity of its lines. *See, e.g.,* 49 C.F.R. § 192.361(a) (1999) (specifying the depth below the surface at which service lines must be installed); 49 C.F.R. § 192.614 (1999) (stating that the operators of buried pipelines must provide

---

**2.** Similarly, Coastal Conduit's reliance on *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.App.-Fort Worth 1971, writ ref'd n.r.e.) is misplaced. *Shatterproof Glass Corp.* involved a claim for negligent misrepresentation brought by the lender against its customer's accountant for understating the customer's liabilities on the audit reports. *See id.* at 874. The court held that an accountant may be held liable to third parties who rely upon financial statements prepared by an accoun-

tant, who fails to exercise ordinary care in the preparation of such statements, and the third party suffers financial loss because of such reliance. *See id.* at 880 (citing RESTATEMENT (SECOND) OF TORTS § 552 (Tent. Draft No. 12, ·1966)). Because Coastal Conduit has not appealed the granting of summary judgment on its negligent misrepresentation claim, *Shatterproof Glass Corp.* is inapplicable to the case at bar.

for a procedure by which to prevent damage to pipelines from excavation activities by providing for the temporary marking of pipeline locations).

Two jurisdictions have allowed causes of action for purely economic damages against utility operators for failure to mark properly line locations upon receiving notification that excavation work would be taking place in the vicinity of utility lines. In *Followell v. Central Ill. Pub. Serv. Co.*, the plaintiff sought reimbursement from the defendant for downtime costs and lost profits incurred as a result of the defendant's alleged mislocation and mismarking of its utility lines. *See Followell v. Central Ill. Pub. Serv. Co.*, 215 Ill.Dec. 608, 610, 278 Ill.App.3d 1103, 663 N.E.2d 1122, 1124 (1996). Although recognizing that purely economic damages generally are not recoverable in tort actions, the court found that under the Illinois Underground Facilities Damage Prevention Act, the legislature intended to create a cause of action for purely economic damages when it provided for a finding of an owner's prima facie negligence in cases where the facilities are mislocated. *See id.* at 610–11, 215 Ill.Dec. 608, 663 N.E.2d at 1124–25 (citing 220 ILCS 50/9 (West 1994)).[3] Similarly, in *A & L Underground, Inc. v. City of Port Richey*, the court held that the Florida Underground Facility Damage Prevention & Safety Act specifically provides for recovery of purely economic damages when an underground utility operator negligently fails to mark the location of its utilities after an excavator has made such a request. *See A & L Underground, Inc. v. City of Port Richey*, 732 So.2d 480, 481 (Fla. 2d DCA 1999) (citing § 556.106(3), Fla. Stat. (1995)).[4] Unlike the Illinois and Florida statutes, the federal regulations upon which Coastal Conduit relies do not provide for a private cause of action for negligence.

Because Entex did not owe a duty of care to Coastal Conduit in the marking of its lines, in the absence of personal injury and property damage, we find that the trial court did not err in granting summary judgment on Coastal Conduit's negligence, negligence per se, and gross negligence claims. Coastal Conduit's first issue is overruled.

## V. Declaratory Judgment

In its second issue, Coastal Conduit claims that the trial court erred in granting summary judgment on its declaratory judgment action. The purpose of the Uniform Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.002 (Vernon 1997). The declaratory judgment act does not confer jurisdiction on the trial court, but, rather makes available the remedy of a declaratory judgment for a cause of action already within the court's jurisdiction. *See State v. Morales*, 869 S.W.2d

---

**3.** The Illinois Underground Facilities Damage Prevention Act provides, in relevant part:
 ... When it is shown by competent evidence in any action for damages to persons, material or equipment brought by persons undertaking excavation or demolition acting in compliance with the provisions of this Act that such damages resulted from the failure of owners and operators of underground facilities or CATS facilities to comply with the provisions of this Act, those owners and operators shall be deemed prima facie guilty of negligence. 220 ILCS 50/9.

**4.** The Florida Underground Facility Damage Prevention & Safety Act provides:

If, after receiving proper notice, a member operator fails to discharge a duty imposed by the provisions of this act and an underground facility of such member operator is damaged by an excavator who has complied with the provisions of this act, as a proximate result of the member operator's failure to discharge such duty, such excavator shall not be liable for such damage and the member operator, if found liable, shall be liable to such person for the total cost of any loss or injury to any person or damage to equipment resulting from the member operator's failure to comply with this act. § 556.106(3), Fla. Stat.

941, 947 (Tex.1994). A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *See Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). Texas courts do not have the authority to render judgments that merely constitute advisory opinions. *See Patterson v. Planned Parenthood of Houston & S.E. Tex., Inc.,* 971 S.W.2d 439, 443 (Tex.1998). An opinion is advisory when the judgment sought would not constitute specific relief to a litigant or affect legal relations. *See Brinkley v. Texas Lottery Comm'n,* 986 S.W.2d 764, 767 (Tex.App.-Austin 1999, no pet.).

■ Coastal Conduit sought to have the trial court declare that Entex was violating federal regulations regarding the marking of its gas line locations and the burying of its gas lines. *See* 49 C.F.R. § 192.361; 49 C.F.R. § 192.614. We have previously determined that Coastal Conduit cannot maintain a cause of action in negligence for purely economic damages when it was not in contractual privity with Entex and when it has not claimed personal injury or property damage. Rendering declaratory judgment that Entex is in violation of either federal regulation cannot change the holding that, under the facts of this case, Coastal Conduit cannot ever recover economic damages from Entex. Thus, any opinion issued by this court regrading Entex's compliance with those regulations would constitute nothing more than an advisory opinion. We hold that the trial court did not err in granting summary judgment on Coastal Conduit's declaratory judgment action. Coastal Conduit's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.